IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------
CANDICE HOLOVICH                          :
620 Manatawny St., #2,                    :     CIVIL ACTION NO.: _____
Pottstown, PA 19464                       :
                                          :     JURY TRIAL DEMANDED
                                          :
                    Plaintiff,            :
        v.                                :
                                          :
201 MAIN STREET, LLC d/b/a                :
DAVIO'S NORTHERN ITALIAN                  :
STEAKHOUSE                                :
200 Main Street                           :
King of Prussia, PA 19406                 :
                                          :
                    Defendant.            :
---------------------------------------------------------

## CIVIL ACTION COMPLAINT

Plaintiff, Candice Holovich ("Plaintiff"), by and through her undersigned attorney, for her Complaint against Defendant 201 Main Street, LLC d/b/a Davio's Northern Italian Steakhouse ("Defendant"), alleges as follows:

## INTRODUCTION

1.      Plaintiff initiates this action contending that Defendant violated her rights protected by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.,* and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*

2.      In relevant part, Plaintiff contends that Defendant subjected her to sexual harassment of a severe and pervasive nature, resulting in a hostile and offensive work environment because of sex in violation of Title VII and the PHRA, and constructively discharged her from employment because of her sex and in retaliation for her complaints of discrimination.

**PARTIES**

3. Plaintiff Candice Holovich is a citizen of the United States and Pennsylvania and currently maintains a residence at 620 Manatawny St., #2, Pottstown, PA 19464.

4. Upon information and belief, Defendant 201 Main Street, LLC d/b/a Davio's Northern Italian Steakhouse is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with a business location at 200 Main Street, King of Prussia, PA 19406, at which Plaintiff was employed.

**JURISDICTION AND VENUE**

5. Paragraphs 1 through 4 are hereby incorporated by reference as though the same were fully set forth at length herein.

6. On or about April 5, 2022, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e). Plaintiff's EEOC charge was docketed as EEOC Charge No. 530-2022-03613. Plaintiff's EEOC was filed within one hundred and eighty (180) days of the unlawful employment practices alleged herein.

7. On or about February 6, 2023, the EEOC issued a Dismissal and Notice of Right to Sue advising her that she had ninety (90) days to file suit against Defendant.

8. On May 3, 2023, within the statutory timeframe applicable to her complaint, Plaintiff filed the instant action.

9. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

10. This action is authorized and initiated pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1, *et seq.*

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

12. This Court has pendant jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as those claims arise from the same common nucleus of operative fact as her federal claims.

13. The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as the Defendant resides in this judicial district, doing business therein, and the events giving rise to this action occurred in this judicial district.

## GENERAL FACTUAL ALLEGATIONS

14. Paragraphs 1 through 13 are hereby incorporated by reference as though the same were fully set forth at length herein.

15. Plaintiff began working for Defendant in January 2008, when she was hired as a Pastry Cook at Defendant's Philadelphia location.

16. After working for Defendant in various positions and at several Davio's locations, Plaintiff was promoted to the position of Pastry Chef in or around the fall of 2015.

17. Approximately one (1) year later, in late 2016, Plaintiff was transferred to Defendant's King of Prussia, PA location.

18. Throughout the course of her employment, Plaintiff performed her job well, receiving positive feedback regarding her performance and no disciplinary action.

19. During the time period described below, Plaintiff reported to Defendant's Executive Chef, Nick Deberardinis ("Mr. Deberardinis"), who directly supervised the kitchen staff, as well as Defendant's General Manager, Michael Dombkoski ("Mr. Dombkoski").

20. In or around February 2021, Plaintiff began to be subjected to severe, pervasive, sustained, and degrading sexual harassment by one of Plaintiff's coworkers in the kitchen, Dishwasher Gonzalo Perez ("Mr. Perez").

21. In this regard, Mr. Perez consistently engaged in unwelcome, sexually-charged behavior which made Plaintiff extremely uncomfortable, often directly in front of Plaintiff's coworkers, including Mr. Deberardinis.

22. For example, Mr. Perez frequently referred to Plaintiff as his "novia" (Spanish for "girlfriend") and would tell other team members how beautiful Plaintiff was.

23. Mr. Perez would also frequently try to caress or grab Plaintiff's arms, or hold Plaintiff's hand, when Plaintiff entered the dish area, despite Plaintiff's firm requests (in both English and Spanish) not to touch her.

24. Not only would Mr. Perez touch or attempt to touch Plaintiff, but he would often wait in his car for Plaintiff's shift to end so he could wave goodbye, or, if Plaintiff left before him, say, "Adios, mi amor ["Goodbye, my love" in Spanish]."

25. Mr. Perez's stalker-like behavior became so severe that Plaintiff began modifying her behavior at work in order to avoid him, such as by obtaining all the utensils and dishes she would need for the day before Mr. Perez's shift began and by waiting in the office for him to leave the building before changing out of her work clothes.

26. Defendant's Executive Chef, Mr. Deberardinis, who had the authority to discipline the kitchen staff, including Plaintiff and Mr. Perez, was well aware of the unwanted romantic attention Plaintiff was receiving from Mr. Perez, but failed to take any action to stop it.

27. For example, after witnessing one of Mr. Perez's frequent attempts to touch Plaintiff, Mr. Deberardinis asked me, "What the heck was Gonzalo doing to you over there?"

28. Although Plaintiff informed Mr. Deberardinis what Mr. Perez was doing, and that it made Plaintiff uncomfortable, Mr. Deberardinis did not do anything to stop it.

29. In fact, Mr. Deberardinis made light of the harassment Plaintiff was being subjected to even while recognizing how disturbing Mr. Perez's behavior towards Plaintiff was.

30. For example, on or around September 11, 2021, at the urging of Plaintiff's coworkers, Plaintiff reluctantly agreed to take a photograph with Mr. Perez during a work event (during which the kitchen staff were jointly celebrating Plaintiff's birthday as well as Mexican Independence Day a few days early).

31. After the photo was taken, Mr. Deberardinis remarked, "Oh geez, what is Gonzalo going to do with that photo," in front of Plaintiff's coworkers.

32. Plaintiff replied, "That's not even funny."

33. Sometime later, Mr. Deberardinis told Plaintiff, "You might become a lampshade, be careful," which Plaintiff took as a reference to the heinous crimes of the infamous killer and grave robber Ed Gein, who fashioned household items from the bones and skin of his victims and exhumed corpses.

34. In or around December 2021, Plaintiff went to retrieve her apron and found a note written on a piece of paper towel which read, "I love you, Mi Amor."

35. Plaintiff was extremely upset and disturbed upon finding this note, which also contained a hand-drawn rose, and complained to Mr. Deberardinis about it, pointing out that this was what Mr. Perez called her.

36. A few days later, Plaintiff found that someone had placed banana peels inside her kitchen shoes.

37. On February 18, 2022, Mr. Perez gave Plaintiff a gift bag for Valentine's Day.

38. Plaintiff did not open the bag until she got home, but was mortified by what she found inside.

39. Specifically, the bag - which was addressed in sharpie, "PARA MI ESPOSA" ("FOR MY WIFE" in Spanish), contained the following items: 2 necklaces, 3 bracelets (one with a heart, one with a LOVE inscription), 2 St. Patty's Day hats, 2 cans of juice, 1 bottle of champagne, 3 pairs of women's intimate lace underwear, and 1 pair of women's intimate lace (the latter two items inside a smaller bag with the inscription "CELEBRATE").

40. Upon viewing these items, feelings of shock, embarrassment, and fear coursed through Plaintiff and she began to cry.

41. Plaintiff was and still is deeply upset by this experience.

42. The following day, February 19, 2022, Plaintiff complained to Mr. Deberardinis about what Mr. Perez had done.

43. Mr. Deberardinis spoke with Mr. Dombkoski, who pulled Plaintiff aside later that morning and told her, "The situation will be handled."

44. Nevertheless, Plaintiff was forced to work with Mr. Perez the rest of the day as well as on February 22, 2022, after Plaintiff returned from (2) days off.

45. During her conversations with Mr. Deberardinis and Mr. Dombkoski, Plaintiff made it clear that she wanted her complaint to be handled discretely.

46. Nevertheless, when Plaintiff returned to work on February 22nd, Defendant's new Sous Chef Walter told her, "I heard what happened with Gonzalo," remarking that it was "completely weird."

47. Although Mr. Deberardinis later told Plaintiff that he had only told Walter so the latter could help watch Gonzalo and step in if anything happened, the fact that others knew about the gift bag and her harassment complaint only humiliated Plaintiff further.

48. To make matters worse, when Plaintiff met with Mr. Dombkoski later that day, he told Plaintiff that as manager, she needed to "stick up for herself," implying that Plaintiff had not been forceful enough in rejecting Mr. Perez's advances and that she was somehow to blame for the sexual harassment she was subjected to.

49. When Plaintiff replied, "I do stick up for myself," he replied contemptuously, "That's good."

50. On February 23, 2022, Plaintiff met with Mr. Dombkoski and Kara Dunbar ("Ms. Dunbar"), Regional General Manager regarding her complaint of sexual harassment against Mr. Perez.

51. Throughout the interview, Ms. Dunbar downplayed the harassment Plaintiff experienced.

52. For instance, when Plaintiff showed her the "PARA MI ESPOSA" bag and its contents, she asked Plaintiff, "What made you feel uncomfortable about what was in the bag?"

53. When Plaintiff explained about Mr. Perez's habit of staring and even leering at her, she remarked, scathingly, "You feel uncomfortable because Gonzalo looks at you?"

54. When Plaintiff explained that she could not focus, was nervous, shaking, and scared - to the point where Plaintiff could not remember and had to look up recipes she had made hundreds of times before - Ms. Dunbar responded, "You need to find a way to cope with the anxiety."

55. Finally, when Plaintiff explained that she was not comfortable working around Mr. Perez under these circumstances, Ms. Dunbar asked her, "Are you okay messing with Gonzalo's livelihood?"

56. Plaintiff did not know how to respond to this, except to explain that she was not the one at fault for Mr. Perez's continued sexual harassment of her.

57. Although Plaintiff was informed that Mr. Perez was going to be suspended, she was otherwise kept in the dark for nearly two weeks regarding whether Mr. Perez would return to work, whether she would have to work with him, or whether he would be subjected to any disciplinary action beyond suspension, let alone be terminated.

58. In the meantime, Plaintiff was treated differently by her coworkers in the aftermath of her complaints of sexual harassment and Mr. Perez's suspension.

59. For example, on March 1, 2022, Sous Chef Walter, who, upon information and belief, was upset about being caught up in Plaintiff's harassment complaint, did not order Plaintiff's produce, despite a written request she had attached to his clipboard.

60. Rather suspiciously, Sous Chef Walter did the same thing again on March 3, 2022, again claiming that he had "forgotten" to do so.

61. By way of another example, on March 2, 2022, Mr. Dombkoski yelled, "BYE!" very loudly when Plaintiff walked by the office at the end of her shift, and then followed her downstairs to yell "BYE!" again when she walked out the back door.

62. The following day, Mr. Dombkoski failed to inform Plaintiff that a party had increased in size and added another table, necessitating a last-minute scramble to put together another plate of pastries.

63. Although Defendant eventually (and reluctantly) terminated Mr. Perez's employment several weeks after Plaintiff's formal harassment complaint regarding the Valentine's Day bag incident, on March 7, 2022, Plaintiff was forced to resign as a result of the severe hostile work environment Plaintiff faced and Defendant's repeated failures to address it.

64. Defendant knew about the sexually harassing behavior and the hostile work environment to which Plaintiff was subjected, because of the complaints Plaintiff made to Defendant's employees described above and the open and notorious nature of Mr. Perez's conduct towards Plaintiff but nevertheless failed to remedy the situation.

65. The harassment to which Plaintiff was subjected was unwelcome, grossly offensive, and detrimentally affected Plaintiff's employment and would have detrimentally affected the employment of a reasonable person of Plaintiff's sex.

66. Plaintiff was subjected to discrimination because of sex, sexual harassment, and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964.

67. Plaintiff contends that she was constructively discharged from employment in violation of Title VII and the PHRA.

68. It is Plaintiff's understanding that she was subsequently replaced in her position by Defendant.

69. It is believed and therefore averred that Defendant subjected Plaintiff to and/or permitted a hostile work environment because of her sex, subjected her to and/or allowed sexual

harassment against her, retaliated against her for engaging in protected activity, and constructively discharged her from employment in violation of Title VII and the PHRA.

70. Defendant failed to take prompt remedial action to address the aforementioned sexual harassment reported by Plaintiff.

71. As a result of the sexually hostile work environment and retaliation to which Plaintiff was subjected, Plaintiff has suffered damages in the form of, *inter alia*, emotional distress, humiliation, and anxiety, as well as loss of employment.

72. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

73. Plaintiff has, because of her constructive discharge from employment, struggled to obtain other employment and has been and will be forced to expend significant out of pocket expenses on health care.

74. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, earnings and earnings potential, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to her professional reputation.

## COUNT I
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. § 2000e, *et seq.*
## SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT

75. Paragraphs 1 through 74 are hereby incorporated by reference as though the same were fully set forth at length herein.

76. Defendant employed at least fifteen (15) employees at its various locations at all times relevant hereto.

77. Plaintiff is a woman and is therefore a member of a protected class under Title VII.

78. Defendant permitted and/or allowed to exist a hostile work environment because of sex as described above.

79. Defendant had knowledge of the sexual harassment to which Plaintiff was being subjected, but failed to take prompt remedial action to address it.

80. The sexually and retaliatory hostile work environment to which Plaintiff was subjected adversely affected Plaintiff's psychological wellbeing and unreasonably interfered with Plaintiff's work performance.

81. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

82. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered and is suffering significant mental, emotional, psychological, physical, and economic damages, including, but not limited to, loss of income, earnings, and earnings potential.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages and front pay, in an amount to be determined at trial, but no less than $150,000;

b) Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, willful, negligent, wanton, and/or malicious conduct;

      c)      Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this matter;

      d)      Pre-judgment interest in an appropriate amount; and

      e)      Such other and further relief as is just and equitable under the circumstances.

## COUNT II
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. § 2000e, *et seq.*
## CONSTRUCTIVE DISCHARGE

83. Paragraphs 1 through 82 are hereby incorporated as though the same were fully set forth at length herein.

84. Plaintiff's internal complaints to Defendant regarding sexual harassment/sex discrimination constituted protected activity within the meaning of Title VII.

85. Plaintiff was subjected to a retaliatory work environment for engaging in protected activity under Title VII as described above.

86. The sexually and retaliatory hostile work environment to which Plaintiff was subjected adversely affected Plaintiff's psychological wellbeing and unreasonably interfered with Plaintiff's work performance, ultimately leading to her constructive discharge from employment.

87. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

88. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered and is suffering significant mental, emotional, psychological, physical, and economic damages, including, but not limited to, loss of income, earnings, and earnings potential.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages and front pay, in an amount to be determined at trial, but no less than $150,000;

b) Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, willful, negligent, wanton, and/or malicious conduct;

c) Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this matter;

d) Pre-judgment interest in an appropriate amount; and

e) Such other and further relief as is just and equitable under the circumstances.

## COUNT III
## PENNSYLVANIA HUMAN RELATIONS ACT
## 43 P.S. § 951, *et seq.*
## SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT

89. Paragraphs 1 through 88 are hereby incorporated by reference as though the same were fully set forth at length herein.

90. The conduct described herein and above constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, in that Defendant unlawfully and illegally discriminated against Plaintiff because of her sex by subjected to a severe and pervasive hostile work environment because of sex.

91. Plaintiff is therefore afforded the opportunity to seek any and all remedies available under the PHRA, 43 P.S. § 951, *et seq.*

92. Because of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered damages in the form of, inter alia, loss of past and future wages and compensation, personal humiliation, emotional distress, embarrassment, loss of employment, promotion benefits, earnings and earnings potential, and loss of other significant economic benefits.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and grant the maximum relief allowed by law, including, but not limited to:

a) Back wages, front pay, loss of health benefits, and raises in an amount to be determined at trial, but no less than $150,000;

b) Compensatory damages in an amount to be determined at trial;

c) Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

d) Pre-judgment interest in an appropriate amount; and

e) Such other and further relief as the Court deems just and equitable under the circumstances.

<u>**COUNT IV**</u>
<u>**PENNSYLVANIA HUMAN RELATIONS ACT**</u>
<u>**43 P.S. § 951, *et seq.***</u>
<u>**CONSTRUCTIVE DISCHARGE**</u>

93. Paragraphs 1 through 92 are hereby incorporated by reference as though the same were fully set forth at length herein.

94. The conduct described herein and above constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, in that Defendant unlawfully and illegally discriminated and retaliated against Plaintiff because of her sex and for engaging in

activity protected by the PHRA, ultimately leading to her constructive discharge from employment as aforesaid.

95. Plaintiff is therefore afforded the opportunity to seek any and all remedies available under the PHRA, 43 P.S. § 951, *et seq.*

96. Because of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered damages in the form of, inter alia, loss of past and future wages and compensation, personal humiliation, emotional distress, embarrassment, loss of employment, promotion benefits, earnings and earnings potential, and loss of other significant economic benefits.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and grant the maximum relief allowed by law, including, but not limited to:

a) Back wages, front pay, loss of health benefits, and raises in an amount to be determined at trial, but no less than $150,000;

b) Compensatory damages in an amount to be determined at trial;

c) Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

d) Pre-judgment interest in an appropriate amount; and

e) Such other and further relief as the Court deems just and equitable under the circumstances.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.

                                              Respectfully submitted,

                                              **MURPHY LAW GROUP, LLC**

                  By:     /s/ Michael Groh
                                   Michael Murphy, Esq.
                                   Michael Groh, Esq.
                                   Eight Penn Center, Suite 2000
                                   1628 John F. Kennedy Blvd.
                                   Philadelphia, PA 19103
                                   TEL: 267-273-1054
                                   FAX: 215-525-0210
                                   murphy@phillyemploymentlawyer.com
                                   mgroh@phillyemploymentlawyer.com
                                   Attorneys for Plaintiff

Dated: May 3, 2023

## DEMAND TO PRESERVE EVIDENCE

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.